**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 9:09-CR-80036-DMM** |
| | ) | |
| **JOHN GERARD KRANTZ,** | ) | |
| | ) | |
| **Defendant.** | ) | |

FILED BY CDS D.C.
APR 07 2023
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

**MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE**

**TO THE HONORABLE DONALD M. MIDDLEBROOKS, UNITED STATES DISTRICT JUDGE:**

1. John Gerard Krantz, pro se, moves this Court for an order terminating Krantz's term of supervised release pursuant to 18 U.S.C. § 3583(e)(1) and Fed. R. Crim. P. Rule 32.1. Krantz has successfully completed 40 months of his initially recommended 60-month[1] term of supervised release, which was modified during the last minute of the sentencing hearing to 120 months. Early termination of supervised release is warranted due to Krantz's exemplary post-conviction adjustment and conduct, consistent employment, successful completion of the Sex Offender Treatment Program, passing all polygraph examinations and urinalysis testing, and no history of attempting to actually meet anyone to engage in illicit conduct under 18 U.S.C. 2422(b). Such action is warranted by the conduct of the defendant and in the interests of justice.

[1] The Pre-Sentence Investigation Report recommendation was 60 months, hence placing Krantz at 66% completion point.

## I. **Background**

2. Krantz pled guilty to one count of "Use Of A Facility And Means Of Interstate Commerce To Persuade, Induce, Or Entice A Minor To Engage In Sexual Activity," Title 18 US Code 2422(b), and was sentenced to a term of 151 months imprisonment and 10 years of supervised release, assessment of $100.00, paid in full.

## II. **Legal Standards**

3. A defendant may move to terminate his term of supervised release "at any time after the expiration of one year of supervised release . . . ." 18 U.S.C. § 3583(e)(1). After considering the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), the district court "may terminate [the] term of supervised release and discharge the defendant . . . if it is satisfied that such action is warranted by the conduct of the defendant . . . and the interest of justice." United States v. Gregory, No. 20-13440, at *1 (11th Cir. July 19, 2021).

4. "[T]he court to take into account a variety of considerations, including the nature of the offense and the history of the offender, as well as any implications for public safety and deterrence." United States v. Jeanes, 150 F.3d 483, 484 (5th Cir.1998). The Supreme Court has explained that "Congress intended supervised release to assist individuals in their transition to community life," such that "[s]upervised release fulfills rehabilitative ends, distinct from those served by incarceration." United States v. Johnson, 529 U.S. 53, 59 (2000); see also Jeanes, 150 F.3d at 485 ("The supervised release term serves a broader, societal purpose by reducing recidivism.")

## III. Analysis

5. After serving 130 months imprisonment of his 151 month sentence, Mr. Krantz was released early for good conduct, returned to Florida to stay with family, integrated back into society, gainfully employed working two part-time jobs totaling over 40 hours per week, and due to his fully compliant low-risk status, has been stepped down to a line officer. He has successfully completed the S.H.A.R.E. Sex Offender Treatment Program, passed all drug test urinalysis and semi-annual polygraph exams and on occasion, he volunteers with food distribution to non-profit organizations: most recently, a local community church that provides assistance to families in need and passing out excess pizza from work to the homeless.

6. A federal Judiciary study[2] of early termination of supervision of low-risk offenders shows that the practice not only saves money, it does so without compromising public safety. Criteria were created by the Judicial Conference to help probation officers properly identify offenders for early termination of supervision. Those criteria include stable community reintegration; progressive strides toward supervision objectives; no history of violence and no aggravated role in the offense of conviction; no recent evidence of alcohol or drug abuse, or psychiatric episodes; and no identifiable risk to public safety.

Mr. Krantz has fully reintegrated into the community, made progressive strides toward supervision objectives, has no history of any violence or any evidence of alcohol / drug abuse or psychiatric episodes, and no identifiable risk to public safety.

[2] https://www.uscourts.gov/news/2013/09/24/early-termination-supervision-cost-effective-and-safe

7. Further analysis indicates Mr. Krantz has a very low recidivism / rearrest rate as determined by several recent U.S. Sentencing Commission Reports:

A. "Criminal history score and Criminal History Category (CHC) are strong predictors of recidivism; Offenders with zero criminal history points had a lower rearrest rate than offenders with one criminal history point (30.2% compared to 46.9%), a slightly longer median time to rearrest (27 months compared to 25 months), and less serious rearrest offenses."[3] Mr. Krantz has successfully completed 40 months supervised release.

"Offenders with zero criminal history points and no prior contact with the criminal justice system had an 11.7 percentage point lower recidivism rate than offenders with zero criminal history points and some prior contact with the criminal justice system."[4] Mr. Krantz had zero criminal history points and no prior contact with the criminal justice system.

B. "Older offenders were substantially less likely than younger offenders to recidivate following release ... Age and criminal history exerted a strong influence on recidivism ... For offenders in Criminal History Category I, the rearrest rate ranged from 53.0 percent for offenders younger than age 30 at the time of release to 11.3 percent for offenders age 60 or older."[5] Mr. Krantz turns 60 this November.

---

[3] United States Sentencing Commission Report, The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders (2017), p. 6

[4] United States Sentencing Commission Report, The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders (2017), p. 6

[5] United States Sentencing Commission Report, The Effects of Aging on Recidivism Among Federal Offenders (Dec 2017), p. 3.

C. "Education level influenced recidivism across almost all categories. For example, among offenders under age 30 at the time of release, college graduates had a substantially lower rearrest rate (27.0%) than offenders who did not complete high school (74.4%)."[6] Mr. Krantz not only graduated high school, he attended secondary education utilizing his GI Bill benefits after participating in Operation Desert Shield / Storm. He graduated from Palm Beach State College in 2003 while working full-time; Computer Information Systems Analysis, Associate in Science, 3.86 PGA.

Additionally, "age exerted a strong influence on recidivism across all sentence length categories. Older offenders were less likely to recidivate after release than younger offenders who had served similar sentences, regardless of the length of sentence imposed."

D. "Incarceration lengths of more than 120 months had a deterrent effect … In the two models with the larger sample sizes, offenders incarcerated for more than 120 months were approximately 30 percent less likely to recidivate relative to a comparison group receiving less incarceration. In the third model, offenders incarcerated for more than 120 months were approximately 45 percent less likely to recidivate relative to a comparison group receiving less incarceration."[7] Mr. Krantz was incarcerated for 130 months.

Statistically, Mr. Krantz has a near zero percent chance of re-offending or being rearrested.

---

[6] United States Sentencing Commission Report, The Effects of Aging on Recidivism Among Federal Offenders (Dec 2017), p. 3.

[7] United States Sentencing Commission, Length of Incarceration and Recidivism, April 2020, p. 4.

## IV. SUMMARY

The Defendant respectfully moves this Court to grant early termination, taking into consideration his criminal history, characteristics, and compliance with the rules and regulations of supervised release. Mr. Krantz has been supervised for almost three and a half years, has had no issues of non-compliance, has successfully completed treatment goals, and statistically has a near zero percent chance of recidivating / rearrest. The Defendant's Pre-Sentence Report guideline range was for a term of supervision for five years; he has served over two-thirds of that initially recommended term. The Defendant's initial supervising probation officer (for the first three years) recommends early termination.

Dated: April 5, 2023

Respectfully submitted,

John G. Krantz
2507 Hillsdale Ave
Largo, FL 33774

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 5th day of April, 2023, a copy of this document entitled MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE was mailed, postage prepaid to:

United States Probation Office
501 South Flagler Drive
West Palm Beach, FL 33401-5912

U.S. Attorney's Office
500 S. Australian Ave, Ste. 400
West Palm Beach, FL 33401

John G. Krantz

JOHN G. KRANTZ
2507 HILLSDALE AVE
LARGO, FL 33774

CERTIFIED MAIL

7022 1670 0002 1463 7932

RDC 23

33401

PAUL G. ROGERS FEDERAL BLDG
AND U.S. COURTHOUSE
701 CLEMATIS STREET, ROOM 202
WEST PALM BEACH, FL 33401

USMS INSPECTED
BY

33401-511352

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE