**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 09-80036-CR-MIDDLEBROOKS**

**UNITED STATES OF AMERICA**

**v.**

**JOHN GERARD KRANTZ,**

**Defendant.**
________________________________/

**RESPONSE TO DEFENDANT'S *SECOND* MOTION FOR TERMINATION OF SUPERVISED RELEASE**

The United States of America, herein by the undersigned Assistant United States Attorney responds to the defendant's motion to terminate supervised release (DE 91). This is the defendant's second motion for such relief. This Court has ordered the United States to respond to said motion (DE 92). The government has consulted with United States Probation Officers Michael Parrish and Donelle Eller regarding the same. The government and probation object to the defendant's request to terminate his supervised release for the reasons stated below:

**BACKGROUND**

**A. Offense Conduct[1]**

Between December 4, 2008 and March 2009, the Palm Beach County Sheriff's Office (PBSO) received sixteen (16) CyberTip reports from the National Center for Missing and Exploited Children ("NCMEC") regarding a person located in Lake Worth, Florida, who was initiating contact with females between the age of 14 and 17 years old on MySpace.com.

[1] The underlying facts have been taken from the PSR and plea hearing transcript (DE 60).

According to the tips, the person created several MySpace.com profiles and used them to make contact with the girls. The person also used the profiles to send pictures of himself exposing his penis to the underage girls. In several of the reports, the person exchanged sexually explicit emails with the underage girls. In each of the CyberTip reports, the subject used a variation of the screen name “HardThickAndJuicy” on the MySpace.com accounts. MySpace.com reported each incident to the NCMEC and captured the pictures, links and internet protocol (IP) addresses used by the subject in each of the 16 reports. The same Comcast IP address was used in each of the incidents reported. In some of the reports, MySpace.com also captured the messages sent between the subject and the child victim. In several of the messages the suspect provided a Yahoo! Messenger email addresses as “oohlajgk@yahoo.com”.

Upon receiving the CyberTips, BSO[2] issued subpoenas to both MySpace.com and Comcast requesting subscriber and billing information regarding the accounts. Comcast’s response showed that the IP address of 67.191.90.218 was assigned to John Krantz of 12th Avenue North, Lake Worth. John Gerard Krantz’s (KRANTZ) Florida Driver's License photograph was obtained and matched the subject seen in one of the pictures sent to a girl in the CyberTips. Furthermore, KRANTZ’s initials, JGK, matched the initials used in email address “oohlajgk@yahoo.com.”

On December 29, 2008, an undercover (UC) PBSO detective added the screen name “oohlajgk” to her undercover Yahoo! Messenger account. By doing this, an email was sent to the “oohlajgk” email account inviting him to be a Yahoo! “friend.” The UC identity created by the detective portrayed a fourteen-year-old female utilizing the screen name “Brooke Balen”. The UC conducted all of her chats from a secure computer located in Palm Beach County.

---

[2] In South Florida, the regional ICAC was previously known as the Law Enforcement Against Child Harm (LEACH) task force, which is based out of the Broward County Sheriff's Office ("BSO")

On December 31, 2008, KRANTZ, using "oohlajgk@yahoo.com," accepted the friend request from the UC's undercover Yahoo! profile and sent an instant message. The instant message box had a picture of a penis in the profile picture and KRANTZ used the name "John Smith" as his display name. KRANTZ asked if they were "myspace friends?" He then indicated that he had a new Myspace.com page and sent the UC a link. The UC went on KRANTZ' Myspace.com page, where there was a full-length photograph of KRANTZ not wearing any clothes, with his hand placed over his penis. The page also featured close-up shots of several very distinctive tattoos on KRANTZ. The UC was able to determine that the person portrayed on the Myspace.com page matched the person portrayed on the Florida driver's license as KRANTZ.

KRANTZ and the UC engaged in several brief instant messages between December 31, 2008 and January 14, 2009. He asked the UC to send a MySpace.com page link. On January 12, 2009, the UC sent KRANTZ a link to an undercover MySpace.com page consisting of a profile set as a 14-year-old female. The page portrayed a picture of a female PBSO Deputy Sheriff that was taken when she was a teenager. During an instant message session on January 14, 2009, the UC told KRANTZ that she was 14 years old and she was home from school that day because she was sick. KRANTZ stated that he was 35 years' old. In several subsequent chat sessions, the UC repeated to KRANTZ that she was 14 years old.

On February 23, 2009, the UC was logged into her undercover Yahoo! account and received an instant message from KRANTZ using the oohlajgk@yahoo.com address. KRANTZ wrote very explicit emails to the UC and asked her if she had a webcam. He said that he had a webcam and asked if the UC wanted to see him. The UC responded yes. KRANTZ asked "are u home alone?" and "don't tell anyone, ok?" He then stated, "take ur panties off hun" and began a webcam session. The webcam showed a live video of a naked white male seated in a chair

masturbating with his hand. The UC recognized the background as one observed in several of the CyberTip complaints from NCMEC. The walls were light-colored and a doorway was observed that appeared to lead into a kitchen. Although KRANTZ' face was not visible during the webcam transmission, several distinctive tattoos were visible, which matched tattoos shown on the photograph of KRANTZ on his MySpace.com profile page. KRANTZ continued to masturbate and periodically the video would stop while KRANTZ would type additional explicit messages. The webcam session continued until KRANTZ ejaculated. After the sexual chat concluded, KRANTZ gave specific instructions to the UC about how to delete the chat session from the archive settings on Yahoo! stating "make sure ur mom isn't saving ur messages!" He advised, "remember...our secret." The webcam and chat session then ended.

The UC was able to capture the IP address through which KRANTZ was communicating on Yahoo!. It was the same IP address that appeared on all of the NCMEC CyberTip complaints. On March 5, 2009, Comcast confirmed that the IP address was still assigned to KRANTZ in Lake Worth, Florida, and that it was so assigned at the time of the webcam transmission.

On March 2, 2009, the UC received another instant message from KRANTZ, using the oohlajgk@yahoo.com email address. This time, KRANTZ indicated that he thought about doing what they did the last time "for real" and "in person." KRANTZ and the UC discussed meeting, but KRANTZ ultimately stated that it was "too much trouble hun" and "we have to wait." At the end of the conversation, KRANTZ asked the UC whether she had told her best friend about him. When the UC said no, KRANTZ responds, "ok good girl" and "its our secret." The chat ended with KRANTZ telling the UC "u should get a cam" and he would give her the money to do so.

On March 6, 2009, KRANTZ sent another instant message to the UC. KRANTZ asked the UC if she would help him masturbate, and– again using very explicit language – started a webcam

session masturbating himself. The UC recognized the background as the same from before and she also recognized the same matching tattoos on KRANTZ body. The webcam session continued until KRANTZ ejaculated.

**B. Relevant Procedural History**

KRANTZ was arrested on March 9, 2009. He was indicted on March 26, 2009 on one (1) count of attempting to persuade, induce, entice, and coerce a person under the age of 18 years to engage in a sexual activity for which any person can be charged with a criminal offense, by means of a facility of interstate commerce, that is a computer, from December 31, 2008 through March 6, 2009, in violation of 18 U.S.C. § 2422(b); two (2) counts of attempting to use a computer to knowingly transfer obscene matter, to an individual under the age of 16 years, on February 23, 2009 and March 6, 2009, respectively, in violation of 18 U.S.C. § 1470 (DE 17). In exchange for his guilty plea to Count 1 of the Indictment on May 18, 2009, the government agreed to dismiss counts 2 and 3 (DE 33). KRANTZ was sentenced on May 18, 2009 to 151 months' imprisonment, followed by 120 months' supervised release (DE 46). Along with the standard conditions of supervision, the court imposed several special conditions of supervised release, including sex offender treatment. KRANTZ did not object to the imposed sentence. (DE 46:4; 91:10). KRANTZ could have received up to life imprisonment and up to lifetime supervised release. *See* 18 U.S.C. § 2422.

KRANTZ has actively attempted to overturn his sentence and/or conviction. On October 5, 2010, the Eleventh Circuit issued a mandate affirming the conviction and sentence (DE 66). Then, on November 25, 2014, this Court denied his motion pursuant to Fed.R.Crim.P. 59(e) for reconsideration of the Judgment (DE 72). On July 18, 2016, this Court denied his motion pursuant to 18 U.S.C. § 2255 (DE 81) and his motion for reconsideration on January 31, 2017 (DE 84).

Per the Bureau of Prisons website, https://www.bop.gov/inmateloc/, KRANTZ was released on December 23, 2019 and began his 10-year period of supervised release. On February 20, 2020, this Court granted (without objection from the government), the defendant's motion to modify the terms of his supervised release.

On March 11, 2021, this Court denied the defendants motion for early termination of supervised released stating, "[a]lthough in compliance, Mr. Krantz has not shown reasons that would justify early termination of supervision so early in his term" (DE 94). KRANTZ previous motion for early termination was fueled by his notion that he did not commit any of his original crimes, there was no probable cause for his arrest, or was there proof beyond a reasonable doubt by the government (DE 91:2-6). He added at the end of his motion that he wanted to terminate his supervision so it would be easier for him to work and care for his mother (DE 91:8).

**C. The Instant Motion**

On April 7, 2023, the Court received KRANTZ's current motion for early termination of supervised release (DE 95). He argues that because he has completed 40 of the 60 months supervised released imposed upon him by this Court that early termination, "is warrant by the conduct of the defendant and in the interests of justice." *Id.* at 1. He does not reiterate his false beliefs of innocence or difficulty caring for his mother or working[3]. The government objects to this request for the reasons outlined below.

[3] According to United States Probation Officer Eller, KRANTZ currently resides with his mother, sister, and brother-in-law in Largo, Florida and is employed at two pizza restaurants as a delivery driver. Despite supervised release, KRANTZ was able to find and maintain work.

## ARGUMENT

### A. Legal Standard

The purpose of supervised release "is to improve the odds of a successful transition from the prison to liberty." *Johnson v. United States*, 529 U.S. 694, 708–9 (2000) (citation omitted). A district court may terminate a term of supervised release after the completion of one year of the term if, after considering specified factors set forth in 18 U.S.C. §3553(a), and the court determines such action is both warranted by the defendant's conduct and is in the interests of justice. *See* 18 U.S.C. § 3583(e)(1).

In making that determination, the district court must consider several factors: (1) the nature and circumstances of the defendant's offense and the defendant's history and characteristics; (2) the need to deter criminal conduct, protect the public from further crimes of the defendant, and effectively provide the defendant with needed training, medical care, or correctional treatment; (3) the applicable sentencing guidelines; (4) policy statements issued by the Sentencing Commission; (5) the need to avoid sentencing disparities; and (6) the need to provide restitution to any victims. 18 U.S.C. § 3583(e)(1); 18 U.S.C. § 3553(a)(1), (a)(2)(B)--(D), (a)(4)--(a)(7); *see also United States v. Easton*, 755 F. App'x 916, 918 (11th Cir. 2018). The district court "need not explain each factor's applicability, nor always explicitly articulate that it considered the factors." *Johnson*, 877 F.3d at 998. Rather, "the court's order, in light of the record, must indicate that the court considered" the § 3553(a) factors. *Id*; *see United States v. McClamma*, 548 F. App'x 598, 599 (11th Cir. 2013) (citing 18 U.S.C. § 3583(e)(1)).

### B. Supervised Release of Sex Offenders

Since 2003, the statutorily authorized term of supervised release for a child pornography offense under Section 2252A is "any term of years not less than 5, or life." 18 U.S.C. § 3583(k).

The Eleventh Circuit in *United States v. Moriarty*, 429 F.3d 1012 (11th Cir. 2005) quoting *Johnson*, 529 U.S. 55, 59, stated "Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." For example, the House Conference Report on the PROTECT Act, which authorized lifelong terms of supervised release under 18 U.S.C. § 3583(k), states in relevant part:

> This section responds to the long-standing concerns of Federal judges and prosecutors regarding the inadequacy of the existing supervision periods for sex offenders, particularly for the perpetrators of child sexual abuse crimes, whose criminal conduct may reflect deep-seated aberrant sexual disorders that are not likely to disappear within a few years of release from prison.

*Moriarty*, 429 F.3d at 1025 (11th Cir. 2005) (quoting H.R. Rep. No. 108-66, at 49-50 (2003) (holding that a life term of supervised release for several child pornography-related offenses did not constitute cruel and unusual punishment in violation of the Eighth Amendment). Moreover, the Eleventh Circuit has concluded that a life term of supervised release was substantively reasonable for a defendant who had been convicted of one count of distribution of child pornography and two counts of possession of such materials. *See United States v. Cubero*, 754 F.3d 888, 898 (11th Cir. 2014).

**C. Early Termination of Supervised Release**

As noted during the defendant's first attempt to have his supervised release terminated, he has completed more than one year of supervision. Therefore, the question before the Court is whether early termination is both warranted by the defendant's conduct and is in the interest of justice. *See* 18 U.S.C. § 3583(e)(1). It is neither.

Early termination is only <u>occasionally</u> justified, as Section 3583 does not provide for early termination based solely on a defendant's compliance with the terms of his supervision. *See United States v. Reisner*, No. 4:06-CR-077-SPM, 2008 WL 3896010, at *1 (N.D. Fla. Aug. 20, 2008) (denying motion for early termination in view of the defendant's failure to "demonstrate

exceptionally good behavior or other extraordinary circumstances sufficient to warrant early termination"). Instead, early termination of supervised release should occur only when the defendant establishes "something exceptional or extraordinary warrants it." *United States v. Laine*, 404 F. App'x 571, 573–74 (3d Cir. 2010) (citation omitted).

Exceptionally good behavior or other extraordinary circumstances may be sufficient to warrant early termination. *See United States v. West*, No. 5:00-CR-23(HL), 2011 WL 1458723, at *1 (M.D. Ga. April 15, 2011) ("However, while [the defendant's] conduct is certainly laudable, it is not exceptional to the extent that it warrants terminating the remainder of his supervised release. After all, being a productive member of society and exhibiting good behavior is what is expected of every individual, especially those who have been convicted of a criminal offense and are currently serving a term of supervised release."). Thus, taken alone, "[s]imple compliance with the conditions of supervised release [is] expected and not exceptional . . . ." *Laine*, 404 F. App'x at 574. Another factor in determining whether early termination of supervised release is appropriate, is the length of time served. *McClamma*, 548 F. App'x. at 599 (the short length of time, among other factors, was reason for court to deny a motion to terminate supervised release).

**D. Early Termination Not Warranted**

KRANTZ' makes essentially three arguments as to why his supervision should be terminated early related to his compliance with supervised release conditions and community volunteer work (DE 95 at ¶5), that early termination of supervised release saves federal resources (DE 95 at ¶6), and that he is a low risk to re-commit his charged or other offense (DE 95 at ¶7).

First, as to compliance, U.S. Probation Officer Donelle Eller, of the Middle District of Florida, who supervises KRANTZ directly, has provided that he has been in compliance with his supervision. As stated above, "mere compliance with the terms of probation or supervised release

is what is expected of probationers, and without more, is insufficient to justify early termination," *United States v. Caruso*, 241 F. Supp. 2d 466, 469 (D. N.J. 2003); *United States v. Sheckley*, 1997 WL 701370, **2 (2nd Cir. 1997) (no abuse of discretion where court denied early termination for fully compliant defendant; early termination is not warranted as a matter of course; on the contrary, it is only occasionally justified due to changed circumstances such as defendant's exceptionally good behavior); *United States v. McKay*, 325 F. Supp. 2d 359, 360 (E.D.N.Y. 2005)(defendant in full compliance with supervision conditions nonetheless "fails to present facts and circumstances that demonstrate the 'exceptionally good' behavior referred to in the precedents;" early termination denied). The defendant is far from demonstrating "exceptionally good behavior" over and above mere compliance. Moreover, he has yet to complete his sex offender treatment as he is currently in the "maintenance phase" of therapy.

Second, as to the resources saved, although the United States is appreciative of KRANTZ concern, the United States has a greater interest, despite the financial burden, of monitoring KRANTZ on supervision so that he does not reoffend. Given KRANTZ' history of his solicitation of minor-aged girls for sex, preventing a KRANTZ from victimizing a child, is certainly worth the cost of keeping him on supervision.

Finally, KRANTZ points to his understanding of a 2017 United States Sentencing Commission report ("the Report"), summarizing that he is not likely to commit future offenses. Contrary to KRANTZ' interpretation of the Report[4], there is a 37.6% rearrest rate for recidivism amongst the 412 "child pornography" offenders in the study, which includes those sentenced for solicitation of minors. The Report at Table 4, Appendix A-2. "Offenders convicted of a child

---

[4] Without citing the location of the report, the government assumes KRANTZ is referring to the United States Sentencing Commission report entitled, "The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders," at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170309_Recidivism-CH.pdf (last visited April 21, 2023).

pornography offense had the longest median time to rearrest (26 months)", *Id.* at 18, which could suggest that these offenders are more superior at hiding their new crimes and require a longer period of supervised release.

Those supervising KRANTZ agree. Officer Eller further advised that KRANTZ is a Moderate Risk/Category 1 based on the Post-Conviction Risk Assessment Tool (PCRA).[5] Interestingly, Officer Eller reports that the PCRA "self-report section" was invalid due to KRANTZ' defensiveness. KRANTZ' Sex Offender Treatment Intervention and Progress Scale[6] (SOTIPS) revealed that he was still in need of improvement concerning social stability and supports, including his social influences. KRANTZ also presents with sex offender stable risk factors including intimacy deficits and undeveloped relapse prevention skills. Officer Eller advised that his office and KRANTZ' treatment provider continue to work with him in these areas.

KRANTZ' sex offender treatment provider, Mr. Robert Parham, M.A., LMHC, with Parham Counseling, Inc., communicated to Officer Eller that the defendant is actively engaged in treatment and has a polygraph examination scheduled in May 2023. KRANTZ passed polygraph examinations previously.

The United States Probation Office is an arm of this Court and in the best position to provide information about whether KRANTZ is a good candidate to be terminated from supervised release. With so many individuals on supervised release, it would make sense to terminate those who are successful and ready, even if earlier than expected. However, when a probation officer recommends continuing supervised release, it is in the best interest of the defendant and thus the United States. Officer Eller advised**, "**the probation office opposes [KRANTZ] motion for early

[5] https://www.uscourts.gov/sites/default/files/75_2_4_0.pdf. The risk categories are Low, Low-Moderate, Moderate, and High.

[6] https://ddsd.vermont.gov/sites/ddsd/files/documents/sotips-manual.pdf

termination and recommends that he continues to participate in the maintenance phase of sex offender treatment to obtain the skills to live a law-abiding lifestyle and reduce any risk that he may pose to the community."

The defendant cites no facts establishing extraordinary circumstances that would suggest this is an exceptional case warranting early termination of his supervised release. He simply is trying to have this Court remove him from supervision because he has completed three of his 10 years. Accordingly, Defendant's Motion should be denied.

**CONCLUSION**

Based on the foregoing, the Government opposes Defendant's motion for early termination of supervised release.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

*By:* *Gregory Schiller*
Gregory Schiller
Assistant United States Attorney
Court No. A5501906
500 S. Australian Ave., Suite 400
West Palm Beach, Florida 33401
Tel: (561) 820-8711
Tel: (561) 820-8777

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 23, 2023, I electronically filed this document and the exhibit to which it refers with the Clerk of Court using CM/ECF. I further certify that on April 24, 2023, I caused a true and correct copy of this document with exhibits to be mailed to John Krantz, 2507 Hillsdale Ave., Largo, FL 33774[7].

*s/ Gregory Schiller*
Gregory Schiller
Assistant United States Attorney

[7] This is the address the defendant used as the return address on the envelope used to mail his instant motion to the clerk of court.